Scott Edward Cole, Esq. (CA S.B. #160744)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com
Email: lvn@colevannote.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

*Additional Signature Blocks*
*Listed Below*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Thomas Byers, Karen Prestegard, and Skyler Grenn, *individually and on behalf of all others similarly situated*,<br><br>   Plaintiff,<br><br>v.<br><br>OrthoAlaska, LLC.<br><br>   Defendant. | Case No.: 3:23-cv-00242-SLG |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Plaintiffs Thomas Byers, Skyler Grenn, and Karen Prestegard (collectively, "Plaintiffs"), individually and on behalf of the putative class, move pursuant to Fed. R. Civ. P. 23 for an Order: (i) granting preliminary approval of the proposed Settlement; (ii) preliminarily certifying a class for purposes of Settlement; (iii) appointing Plaintiffs as Class Representatives; (iv) appointing Scott E. Cole of Cole & Van Note, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, and Bryan L. Bleichner of Chestnut Cambronne PA as Class Counsel; (v) approving the Parties'[1] proposed form and method of giving notice of the pendency of this action and the Settlement to Settlement Class Members; (vi) directing notice be given to the Settlement Class Members; (vii) scheduling a hearing at which time the Court will consider the request for final approval of the Settlement and request for attorneys' fees and expenses; and (viii) granting such other and further relief as the Court deems proper.

## I.   INTRODUCTION

On or about October 12, 2022, Defendant OrthoAlaska, LLC ("Defendant" or "OrthoAlaska") became aware of a cyber-security incident impacting certain company systems (the "Data Incident"). *See* Pls.' Consol. Class Action Compl. ("Compl") ¶¶ 2, 4. Defendant issued formal notice of the Data Incident to the potentially impacted persons around October 11, 2023. *Id*. ¶ 4. Thereafter, Plaintiffs commenced this class action lawsuit

---

[1] Unless otherwise stated all capitalized terms shall have the definitions set forth in the Settlement Agreement attached as **Exhibit 1** to the Declaration of Bryan L. Bleichner in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, filed concurrently herewith. Citations to the Settlement Agreement will be abbreviated as "SA ¶ ___."

alleging Defendant failed to sufficiently protect their personally identifiable information ("PII") and "protected health information" ("PHI") from unauthorized access. *Id.* ¶ 1.

After commencing litigation, coordinating the various class action lawsuits, obtaining background materials and information about the Data Incident and the Class, and hard-fought settlement negotiations, the Parties reached a settlement that provides substantial benefits to the Settlement Class. Specifically, the Settlement provides monetary relief in the form of a non-reversionary Settlement Fund of $1,185,000.00 from which Settlement Class Members can submit a claim to receive; (i) Out-of-Pocket Losses up to a total of $4,000 per person; (ii) a Pro-Rata Cash Payment of up to $50.00; or (iii) one year of data protection and monitoring services in lieu of a cash payment.  SA ¶¶ 45, 55. In addition, Defendant has confirmed the implementation of certain security upgrades. *Id.* ¶ 63. This is an outstanding result for Plaintiffs and the Settlement Class considering the challenges faced and the risks of protracted litigation.

As further discussed below, the Settlement falls within the range of judicial approval and includes a comprehensive plan to provide notice of the Settlement to the Settlement Class. As such, preliminary approval of the proposed class action settlement is warranted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a healthcare provider serving the people of Alaska, with offices in Anchorage, Eagle River and Wasilla.[2] Compl. ¶¶ 5, 37. In the ordinary course of providing healthcare services, Defendant collects and requires its customers to provide their sensitive

---

[2] *See* https://www.orthoak.net/about (last visited: October 7, 2024).

PII and PHI. *Id.* ¶ 28. On or about September 6, 2022,[3] an unauthorized third party breached Defendant's computer systems and either then or shortly thereafter acquired Plaintiffs' and Class Members' PII and PHI, with Defendant becoming aware of the intrusion on October 12, 2022. *Id.* ¶ 50. On or around October 11, 2023, Defendant began to issue formal notice of the Data Incident to Plaintiffs and the Class. *Id.* ¶ 49.

On October 20, 2023, Plaintiff Byers filed the first Class Action Complaint against Defendant, alleging Defendant was negligent by failing to adequately protect Plaintiffs' and Class Members' PII and PHI from unauthorized access. After the remaining Plaintiffs filed Complaints, this Court Ordered consolidation, and the Consolidated Class Action Complaint was subsequently filed on December 13, 2023. On January 12, 2024, Defendant filed its Motion to Dismiss and to Strike Plaintiffs' Consolidated Class Action Complaint, arguing primarily that Plaintiffs failed to allege legally cognizable damages caused by the Data Incident. After Defendant's Motion to Dismiss was fully briefed, but before an Order on the Motion was entered, the Parties agreed to discuss the possibility of early resolution to minimize the risks, costs, and time expended, through litigation.

Thus, on May 10, 2024, following the exchange of informal discovery and a settlement demand, the Parties participated in a day-long mediation with Magistrate Judge (ret.) David E. Jones. *See* Decl. of Bryan L. Bleichner in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Bleichner Decl.") ¶ 9. The parties were able to reach a resolution after a full-day mediation and upon Judge Jones'

---

[3] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/29e7dc48-81ff-4eb9-802d-2b59d6b1274c.shtml (last visited: October 7, 2024).

Case No. 3:23-cv-00242-SLG
Case 3:23-cv-00242-SLG    Document 41    Filed 10/18/24    Page 4 of 29
*Thomas Byers, et al. v. Oomni Alaska, LLC*

mediator's proposal. *Id.* The terms of the settlement are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith, and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation. *Id.* The Parties now seek preliminary approval of the Settlement Agreement.

## III.   THE SETTLEMENT TERMS

The Settlement negotiated on behalf of the Settlement Class establishes a $1,185,000 non-reversionary Settlement Fund, which will be used to pay for: (i) Administrative Expenses; (ii) Fee Award and Expenses as awarded by the Court; (iii) Service Awards approved by the Court; (iv) valid claims for Out-of-Pocket Losses and *Pro Rata* Cash Payments; and (v) a *cy pres* award of any Remainder Funds. SA ¶¶ 45, 53. The Settlement Fund is the full and complete limit and extent of Defendant's obligations with respect to the Settlement, but for the implementation of certain security upgrades. SA ¶¶ 45, 63.

### A.  Definition of the Settlement Class

Plaintiffs request certification, for settlement purposes only, of a nationwide class of 161,130 individuals, defined as the individuals identified on the Settlement Class List whose personal information may have been involved in the Data Incident. SA ¶ 41. The Settlement explicitly excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement (including any members of the Court's staff assigned to this case); and (iii) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or

4

Defendant's parent companies have a controlling interest and their current or former officers and director. *Id.*

### B. Benefits to the Settlement Class

#### 1. Reimbursement for Out-of-Pocket Losses

Settlement Class Members may submit a claim for reimbursement of documented Out-of-Pocket Losses, not to exceed $4,000.00 per Settlement Class Member. *Id.* ¶ 55(i). To receive reimbursement for Out-of-Pocket Losses, a Settlement Class Member must submit documentation supporting their claim, which can include receipts or other non-self-prepared documentation that documents the costs incurred. *Id.* "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. *Id.*

#### 2. *Pro Rata* Cash Payments

Settlement Class Members may submit a claim for a pro rata cash payment of up to $50.00, based on the amount remaining in the Settlement Fund after the payment of any Fee Award and Expenses, Service Awards, Administrative Expenses, and claims for Out-of-Pocket Losses. *Id.* ¶ 55(ii). This payment may be stacked with any claim for Out-of-Pocket Losses. *Id.*

#### 3. Business Practices Changes & Confirmatory Discovery

Following the Data Incident, Defendant implemented a number of business practice changes and security enhancements designed to prevent future data security incidents. Defendant has agreed to provide information regarding the specifics of the changes

implemented to Class Counsel before the hearing finally approving the Settlement. *Id.* ¶ 63.

## C. Notice Program

The Parties sought bids from several potential claims administrators and agreed to use Kroll Settlement Administration as the Settlement Administrator. *Id.* ¶ 40. Within ten (10) business days of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the Settlement Class List. *Id.* ¶ 64. Within thirty (30) days of entry of the Preliminary Approval Order, Notice shall be provided to Settlement Class Members via U.S. Mail direct notice. *Id.* The Notice Plan provides a program for notifying Settlement Class Members of the Settlement and their rights in simple terms. *Id.*

## D. Claims, Opt-Outs, and Objections.

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to opt-out or object.

### 1. Claims

Settlement Class Members shall have ninety (90) days after the Notice Deadline to complete and submit a claim to the Settlement Administrator. *Id.* ¶ 11. To submit an approved claim, Settlement Class Members shall complete and timely submit a Claim Form that has been approved by the Settlement Administrator, which is attached as Exhibit A to the Settlement Agreement. *Id.* ¶¶ 10, 11.

### 2. Opt-Outs

6

Settlement Class Members will have up to and including sixty (60) days after the Notice Deadline to file a written request to be excluded from the Settlement Class. *Id*. ¶ 29. The Notice shall sufficiently explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a "Request for Exclusion" to the Settlement Administrator postmarked no later than the Opt-Out Deadline. *Id*. ¶ 66. The written Opt-Out Request must include: (i) the name of the proceeding; (ii) the individual's full name; (iii) current address; (iv) personal signature; and (v) the words "Request for Exclusion" or a comparable statement that indicates the individual does not wish to participate in the Settlement. *Id*.

### 3. Objections

Settlement Class Members shall have up to and including sixty (60) days after the Notice Deadline to file a written objection to the Settlement. *Id*. ¶ 28. The Notice shall sufficiently explain the procedure for Settlement Class Members to object to the Settlement by submitting written objections to the Court no later than the Objection Deadline. *Id*. ¶ 67. A written objection must include: (i) the name of the proceedings; (ii) the Settlement Class Members' full name, current mailing address, email address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iv) the identity of any attorneys representing the objector; (v) a statement regarding whether the Settlement Class Members (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a statement identifying all class action settlements objected to by the Settlement Class Member within the previous five (5) years;

7

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al. v. Credit Union 1 Alaska, LLC*
Case 3:23-cv-00242-SLG   Document 41   Filed 10/18/24   Page 8 of 29

and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id*.

### E. Attorneys' Fees, Expenses, and Service Award Payments

The Parties did not discuss Attorneys' Fees and Expenses until after the substantive terms of the Settlement had been agreed upon. Bleichner Decl. ¶ 25. Class Counsel will request an award of attorneys' fees to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund, or $395,000. SA ¶ 80. Further, Class Counsel may request reimbursement of litigation expenses (exclusive of Administrative Expenses). *Id*. Class Counsel will also include a request for Service Award Payments for the Settlement Class Representatives not to exceed $2,500 per Representative. *Id*. ¶ 81. The Settlement Class Representatives' Service Award Payments will be paid in recognition of their contributions to this Litigation. *Id*.

### F. Releases

Upon Final Approval of the Settlement Agreement, Settlement Class Members release, acquit, and forever discharge Defendant and the Released Parties (identified in ¶ 77 of the Settlement Agreement) from all past, present, and future claims and causes of action related to the Data Incident (the scope of the Released Claims is fully defined in ¶¶ 77-79 of the Settlement Agreement). *Id*. ¶ 77-79. The Plaintiffs and Settlement Class Members understand that if the facts upon which the Settlement Agreement is based are found to be different from the facts now believed to be true, the Plaintiffs and Settlement Class Members expressly assume the risk of such possible difference in facts, and agrees

Case No. 3:23-cv-00242-SLG
Case 3:23-cv-00242-SLG   Document 41   Filed 10/18/24   Page 9 of 29
*Thomas, et al. v. Qisitonia, LLC*

that the Settlement Agreement, including the releases, shall remain effective notwithstanding such difference in facts. *Id*. ¶ 79.

## IV.   ARGUMENT AND AUTHORITIES

### A.  Applicable Law

"The Ninth Circuit adheres to a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020).  "[C]ourt approval of a class action settlement involves a two-step process—preliminary approval, followed by final approval after notice to the class[.]" *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM JMA, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009) (citing Manual for Complex Litig., Fourth ("MCL") §21.632)).

A class action settlement must be fair, adequate, and reasonable. *Uschold v. NSMG Shared Services, LLC*, 333 F.R.D. 157, 166 (N.D. Cal. 2019) (citing Fed. R. Civ. P. 23(e)(2)). "Where, as here, parties reach an agreement before class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Id.* (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (internal quotation omitted)). "The Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *Low v. Trump Univ., LLC*, No. 310CV00940GPCWVG, 2016 WL 7387292, at *1 (S.D. Cal. Dec. 20, 2016) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (internal citation omitted)). *See also* MCL, §21.632 (courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement

terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware,* 484 F. Supp. 2d at 1079; *see also* MCL, §26.612; *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Dyer v. Wells Fargo Bank, N.A.*, No. 13-cv-02859-JST, 2014 WL 1900682, at *6 (N.D. Cal. May 12, 2014) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.")).

For the foregoing reasons, the Court should certify the class for settlement purposes, find that the class action settlement is fair, reasonable, and adequate, and permit notice to be directed to class members pursuant to Fed. R. Civ. P. 23.

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al. v. Oomba Alaska, LLC*
Case 3:23-cv-00242-SLG    Document 41    Filed 10/18/24    Page 11 of 29

### B. The Court Should Preliminarily Certify the Settlement Class

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

#### 1. Numerosity

While there is no fixed point at which the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). The proposed Settlement Class, numbering over 160,000 individuals, easily satisfies Rule 23's numerosity requirement. Joinder of so many individuals is impracticable, therefore the numerosity prong is satisfied.

#### 2. Commonality

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's]

11

conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). For the same reason, Plaintiffs allege that commonality is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019). Thus, common questions include whether Defendant engaged in the wrongful conduct alleged; whether Class Members' PII and PHI was compromised in the Data Incident; whether Defendant owed a duty to Plaintiffs and Class members; whether Defendant breached its duties; and whether Defendant unreasonably delayed in notifying Plaintiffs and class members of the material facts of the Data Incident.

Determining the truth of the common questions will resolve the issues of both the named Plaintiffs and the Class, therefore the commonality requirement of Rule 23(a) is satisfied.

### 3. Typicality

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on OrthoAlaska's alleged failure to protect Plaintiffs' and Class members' PII and PHI, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 1036, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII and PHI were compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v.*

12

Case No. 3:23-cv-00242-SLG
Case 3:23-cv-00242-SLG    Document 41    *Thomas Byers, et al.* Filed 10/18/24 *v. OrthoAlaska, LLC* Page 13 of 29

*Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Therefore, typicality has been met for the Settlement Class.

### 4. Adequacy

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiffs have no conflicts of interest with other Class members, are subject to no unique defenses, and they and their counsel have and will continue to vigorously prosecute this case on behalf of the Class. Plaintiffs are members of the Class who experienced the same injuries and seek, like other Class Members, compensation for OrthoAlaska's alleged data security shortcomings that led to the Data Incident and caused them injury. As such, their interests and the interests of their counsel are not inconsistent with those of other Class Members.

Further, counsel for Plaintiffs are qualified, experienced, and able to prosecute this litigation. Settlement Class Counsel have a wealth of experience in litigating complex class action lawsuits similar to this one and have extensive knowledge of the applicable law and sufficient resources to commit to the Settlement Class. The experience of Proposed Settlement Class Counsel—Scott E. Cole of Cole & Van Note, Gary M. Klinger of Milberg

13

Case No. 3:23-cv-00242-SLG
*Thomas Dylan, et al. v. OrthoAlaska, LLC*
Case 3:23-cv-00242-SLG    Document 41    Filed 10/18/24    Page 14 of 29

Coleman Bryson Phillips Grossman, PLLC, and Bryan L. Bleichner of Chestnut Cambronne PA—is more fully set forth in Bleichner Decl. ¶¶ 4-5.

### 5. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

Rule 23(b)(3) requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing

Wright, et al., Fed. Prac. and Proc. § 1777, p. 518–19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Hanlon*, 150 F.3d at 1022. To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

Here, the Plaintiffs' claims depend on whether OrthoAlaska owed and breached a duty to adequately safeguard their PII and PHI. These questions can be determined, for settlement purposes, using the same evidence for all Settlement Class Members. This is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)…") (citation omitted).

Class certification here is also "superior to other available methods for . . . fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(a)(4). Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. Adjudicating individual actions here is impractical: the likely recovery for individual class members is small, the technical issues involved are complex, and the required expert testimony and document review is costly. *See Just Film*, 847 F.3d at 1123; *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163

15

Case No. 3:23-cv-00242-SLG
Case 3:23-cv-00242-SLG    Document 41    Filed 10/18/24    Page 16 of 29
*Thomas Byers, et al. v. OrthoAlaska, LLC*

(9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Because Plaintiffs seek to certify a class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. See *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class has an interest in controlling the prosecution of this action because Plaintiffs' and Class Members' claims are the same. Alternatives to a class action are either no recourse for approximately 160,000 individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are approximately 160,000 class members with modest individual claims, some of whom may lack the resources necessary to seek individual legal redress. *See Las Vegas Sands, Inc.*, 244 F.3d at 1163; *Wolin*, 617 F.3d at 1175; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (The class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). A class action is therefore superior

to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

### C. The Proposed Settlement Meets the Standard for Preliminary Approval.

In order for the court to preliminarily approve a class settlement and to direct that notice be sent to class members, the parties must show that the court "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). *Tuttle v. Audiophile Music Direct Inc.*, No.C22-1081JLR, 2023 WL 3318699, at *3 (W.D. Wash. May 9, 2023). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

As a general matter, preliminary approval is appropriate if the settlement falls within the range of possible approval. *Hunichen v. Antonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL 5854964 at *4 (W.D. Wash. Nov. 12, 2021). In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the

17

class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). In any event, while a complete fairness evaluation is unnecessary at this early juncture, Plaintiffs' and their counsel strongly believe that the resolution reached here is in the Settlement Class's best interests and fully endorse the Settlement.

To that end, the Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including that the proposed class representatives and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . ."). Here, the relevant factors support the conclusion

18

that the negotiated settlement—overseen by a respected neutral mediator—is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Strength of Plaintiffs' Case

Plaintiffs maintain that they have established a strong case for OrthoAlaska's liability, such that it had a duty to protect the PII and PHI of Plaintiffs and the Class, breached that duty by failing to adequately safeguard it, and caused cognizable harms. *See, e.g.*, *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650 (N.D. Cal. 2020) ("[T]ime and money [plaintiff] spent on credit monitoring in response to the Data Breach is cognizable harm to support her negligence claim"); *Krefting v. Kaye-Smith Enter. Inc.*, 2023 WL 4846850 (W.D. Wash. July 28, 2023) (denying motion to dismiss claims for negligence and under the Washington Consumer Protection Act arising out of a data breach); *Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318 (W.D. Wash. July 20, 2023) (same); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *8–15 (S.D.N.Y. Mar. 23, 2021) (upholding data breach claims for negligence, breach of implied contract, breach of confidence, and violations of New York General Business Law); *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *6 (S.D. Fla. Oct. 18, 2012) (upholding data sharing claims for violations of Florida Deceptive and Unfair Trade Practices Act).

However, data breach litigation remains uncertain and evolving, meaning there is no guarantee that Plaintiffs will prevail on the merits. *See Fox v. Iowa Health Sys*., 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (citing *Gordon v. Chipotle Mexican Grill, Inc*., 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.")). Plaintiffs recognize that courts have

19

Case No. 3:23-cv-00242-SLG
*Thomas Bylow, et al. v. OrthoAlaska, LLC*
Case 3:23-cv-00242-SLG   Document 41   Filed 10/18/24   Page 20 of 29

disagreed on many important aspects of data breach litigation—such as those raised in OrthoAlaska's motion to dismiss—making the path to a victory at trial lengthy, complex and difficult, and the novel claims in this area of law do not have certain outcomes. Indeed, the Western District of Washington recently granted a defendant's motion for summary judgment in a data-breach case after concluding, among other things, that the plaintiffs failed to establish the existence of legally cognizable damages caused by the data breach. *Leonard et al. v. McMenamins Inc.*, No. C22-0094-KKE, 2024 WL 4188974 (W.D. Wash. Sept. 13, 2024). Given these uncertainties, the benefits provided herein favor preliminary approval of the Settlement.

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Plaintiffs believe their case is strong, as noted above, the inherent risks of complex litigation remain present. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an especially uncertain arena. Historically, data breach cases have faced substantial hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases); *Leonard*, 2024 WL 418897 (dismissing case on summary judgment). Even cases of similar, wide-spread notoriety have been found wanting by trial courts (albeit reversed by appellate courts). *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig*., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the

Case No. 3:23-cv-00242-SLG
*Thomas v. Byers, et al. v. OrthoAlaska, LLC*
Case 3:23-cv-00242-SLG   Document 41   Filed 10/18/24   Page 21 of 29

factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

Although the Plaintiffs are confident that their damages methodologies are sound, the fact remains that the evolving field of data breach class actions leaves uncertainty if these facts are tried in front of a jury. Without settlement, Plaintiffs may recover nothing for their claims, as each of the risks associated with this form of complex litigation could prevent the case from proceeding. As with all litigation, it is "always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 3. The Risk of Maintaining Class Action Status Through Trial

The Court has not yet certified any class treatment of this case, and if Plaintiffs were to proceed to litigate their claims through trial, OrthoAlaska will certainly oppose certification. Indeed, OrthoAlaska already has moved to strike Plaintiffs' allegations that a class action is available on the issue of damages. Because of this, the Plaintiffs risk obtaining and maintaining certification of the class and "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014). While Plaintiffs are confident that this case is well suited for class certification, numerous obstacles to certification remain. Few data breach cases have proceeded forward to obtain a ruling certifying a contested class. The first to obtain certification was *Smith v. Triad of Ala., LLC*, No. 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017), and a more recent certified contested class, *In re Marriott International*

*Customer Data Securities Breach Litigation*, 341 F.R.D. 128 (D. Md. 2022), was recently decertified on appeal, *see In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023). The lack of direct precedent adds to the risks posed by continued litigation. As such, this factor favors approval.

### 4. The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval, as it makes significant relief available to Settlement Class Members from a $1,185,000.00 Settlement Fund. Each Class Member may submit a claim for reimbursement of Out-of-Pocket Losses that are traceable to the Data Incident, as well as up to $50 in cash or one year of data protection and monitoring services from Privacy Shield. This settlement is a strong result for the class, as it helps address Class Members' prior injury while helping them to secure their PII and PHI. It is also within the realm of reasonable, approved settlements in other data breach cases. *See, e.g.*, *Dickey's Barbeque Restaurants, Inc*., No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (79 million people that settled for $115 million); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811 (N.D. Cal. July 22, 2020) (data breach class action involving more than 194 million people that settled for $117.5 million).

Because of the difficulties that Class Members would face litigating each of their claims individually, not to mention subsequent attempts to collect on those claims, and because this settlement is similar to other settlements reached in similar cases, this factor

reflects that the Settlement is fair and favors approval. *See Calderon v. Wolf Firm,* 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlements). Therefore, this factor favors approval, as the Settlement is an excellent result.

### 5. The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Even where formal discovery has not been conducted, this factor weighs in favor of approval where, "[p]rior to engaging in settlement negotiations, the parties [] had full understanding of their positions and views of the case, and were able assess the benefits of a potential settlement." *Hanson v. MGM Resorts Int'l*, 2018 WL 3630284, at *5 (W.D. Wash. July 31, 2018). Similarly, where settlement was reached "after several rounds of arm's-length negotiations," approval is warranted. *Id.* Here, Plaintiffs' counsel and OrthoAlaska engaged in significant pre-mediation exchange of information that allowed Plaintiffs' counsel to evaluate the strengths, potential weaknesses, and value of this case, as well as OrthoAlaska's ability to pay. Bleichner Decl. ¶ 9. Additionally, Plaintiffs' counsel conducted significant investigation into the publicly available facts about the Data Incident and into the Plaintiffs' claims for purposes of drafting the Consolidated Complaint and Amended Consolidated Complaint. *See Id*. ¶¶ 6-7. And finally, the Settlement was not reached until after a full-day mediation and many months of subsequent negotiations. *See id*. ¶¶ 10-14.

Case No. 3:23-cv-00242-SLG
*Thomas v. Byers, et al.,* *OrthoAlaska, LLC*
Case 3:23-cv-00242-SLG    Document 41    Filed 10/18/24    Page 24 of 29

### 6. The Experience and Views of Counsel

Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See id.* ¶ 4. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel endorse the Settlement without reservation. *See id.* ¶ 5. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7. Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

### 8. The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Plaintiffs support the Settlement.

### 9. Lack of Collusion Among the Parties

The parties did not reach the Settlement until after a full day mediation presided over by retired federal magistrate judge, Hon. David R. Jones, which was followed by months of subsequent arm's-length negotiations. The Settlement was ultimately the result of a mediator's proposal, thus assuaging any concerns of collusion. *See G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an

Case No. 3:23-cv-00242-SLG

Case 3:23-cv-00242-SLG    Document 41    Filed 10/18/24    Page 25 of 29.
*Thomas v. Byers, et al. v. Credit Union 1 Alaska, LLC*

experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props.*, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union*, 2023 WL 4315117, *5 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the class, as all class members are entitled to the same relief. Following preliminary approval, Class Counsel will file a motion seeking service award payments for Class Representatives for up to $2,500. This payment is in line with awards granted in similar cases, is

Case No. 3:23-cv-00242-SLG
*Thomas Bylers, et al. v. GCI Communication Corp., et al. Cook Inlet Tribal Council, Inc. v. State of Alaska, LLC*

Case 3:23-cv-00242-SLG   Document 41   Filed 10/18/24   Page 26 of 29

presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000).

### D. The Court Should Approve the Proposed Notice Program.

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.*

Such notice must be the "best notice practicable," see Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally

26

describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id*.

Following preliminary approval, OrthoAlaska will provide the Settlement Class List to the Settlement Administrator, who will in turn disseminate a Short Form Notice to the members of the Settlement Class via U.S. Mail. SA ¶ 43. A Long Form Notice and Claim Form will be made available to Settlement Class Members on the Settlement Website, which will be established by the Settlement Administrator as soon as practicable following entry of the Preliminary Approval order. *Id.* ¶ 47. The Settlement Website will also contain information including the Settlement Agreement, Plaintiffs' Motion for Preliminary Approval, the Preliminary Approval Order, Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Expenses, and/or Service Awards, the operative complaint, and other important documents like the Court-approved notices. *Id*.

The notice plan ensures that Settlement Class Members' due process rights are amply protected, and it should be approved. *See Hartranft v. TVI, Inc.*, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination . . . constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights").

## V.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court: (1) certify the Settlement Class for purposes of the Parties' proposed Settlement; (2) preliminarily approve the Parties' proposed Settlement as set forth in the Settlement Agreement; (3) approve the form and manner of notice of the Parties' proposed settlement to the Settlement Class; and (4) set a hearing date for final approval of the Parties' proposed settlement.

Dated: October 18, 2024                      Respectfully submitted,

*/s/ Bryan L. Bleichner*
Bryan L. Bleichner
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55401-2138
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

Scott E. Cole
**COLE & VAN NOTE**
555 12th Street
Suite 2100
Oakland, CA 94607
(510) 891-9800
sec@colevannote.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(847) 208-4585
gklinger@milberg.com