Scott Edward Cole, Esq. (CA S.B. #160744)*
Laura Grace Van Note, Esq. (CA S.B. #310160)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com
Email: lvn@colevannote.com

Bryan L. Bleichner (admitted *Pro Hac Vice*)
Philip J. Krzeski (admitted *Pro Hac Vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Email: bbleichner@chestnutcambronne.com
Email: pkrzeski@chestnutcambronne.com

Gary M. Klinger (admitted *Pro Hac Vice*)
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

*Interim Co-Lead Class Counsel Attorneys
for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THOMAS BYERS, SKYLER GRENN, and KAREN PRESTEGARD, individually, and on behalf of all others similarly situated, | Case No. 3:23-cv-00242-SLG (Consolidated Lead Case) |
| Plaintiffs, | |
| v. | **PLAINTIFF'S UNOPPOSED MOTION** |
| ORTHOALASKA, LLC, | **FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT** |
| Defendant. | |

# TABLE OF CONTENTS

I.   INCORPORATION BY REFERENCE ................................................................. 2

II.  SUMMARY OF FACTS ................................................................................... 2

III. THE SETTLEMENT TERMS .......................................................................... 2

IV.  THE NOTICE PROGRAM .............................................................................. 2

    A.  Data and Case Setup ........................................................................... 3

    B.  Effectiveness of Notice ........................................................................ 4

    C.  Claims, Opt-Outs, and Objections to Date ........................................ 6

V.   LEGAL ARGUMENT ..................................................................................... 6

    A.  The Settlement Continues to Merit Certification ............................... 7

    B.  Notice Satisfies Due Process ............................................................... 7

    C.  The Settlement Should Be Finally Approved Pursuant to Rule 23(e) ............. 10

    D.  Class Counsel and Class Representatives Have Adequately Represented the Settlement ................................................................. 11

    E.  The Settlement Has No Indicia of Collusion and is the Result of Hard-Fought Negotiations Before an Experienced Mediator ................ 12

    F.  The Relief Provided in Settlement is Fair and Adequate in Light of the Risk and Complexity of the Case ................................................ 13

        1.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...................................................................... 14

        2.  The Risk of Maintaining Class Action Status Through Trial ........ 15

        3.  The Amount Offered in Settlement ............................................ 16

        4.  The Extend of Discovery Completed and the State of the Proceedings ...... 16

        5.  The Experience and View of Class Counsel ............................... 17

i

6. Government Participants ..................................................................... 18

7. The Reaction of Class Members to the Proposed Settlement ..................... 18

8. The Settlement Treats Settlement Class Members Equitably ..................... 19

VI. CONCLUSION ..................................................................................... 21

CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.4(a) ..................... 22

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al.*, *v. OrthoAlaska, LLC*

# **TABLE OF AUTHORITIES**

**CASES**

*Aikens v. Panatte, LLC*, No. 2:17-cv-01519 (W.D. Wash. Feb. 5, 2019) ........................... 7

*Askar v. Health Providers Choice, Inc.*, 2021 WL 4846955 (N.D. Cal. Oct. 18, 2021) ..... 9

*Barnes v. Sea Mar Cmty. Health Centers*, 549 P.3d 112 (2024) ........................................ 9

*Bolding v. Banner Bank,* 2024 WL 755903 (W.D. Wash. Feb. 23, 2024) ........................ 16

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ........................................ 8

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ..................................... 11

*Clemans v. New Werner Co.*, 2013 WL 12108739 (W.D. Wash. Nov. 22, 2013 ............. 19

*Demmings v. KKW Trucking, Inc.*, 2018 WL 4495461 (D. Or. Sept. 19, 2018) ............... 18

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................... 8

*Ewing v. Admin. Sys., Inc.*, 2009 WL 10725426 (W.D. Wash. Sept. 30, 2009) ................. 7

*Garner v. State Farm Mut. Auto. Ins. Co*., 2010 WL 1687832 (N.D. Cal.
   Apr. 22, 2010) ................................................................................................................. 12

*Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307 (S.D.N.Y.
   June 25, 2010) ................................................................................................................. 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................... 7, 11

*Hanson v. MGM Resorts Int'l*, 2018 WL 3630284, (W.D. Wash. July 31, 2018) ........... 11

*Hightower v. Receivable Performance Management*, No. 2:22-cv-01683 (W.D. Wash
   Dec. 13, 2024) ................................................................................................................. 10

*Hillman v. Lexicon Consulting, Inc*., 2017 WL 10433869 (C.D. Cal. April 27, 2017) .... 17

*Hughes v. Microsoft Corp.*, 2001 WL 34089697 ............................................................. 19

*In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299 (N.D. Cal. 2018) ........................ 13

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........... 11, 12, 13

*In re Lidoderm Antitrust Litig*., 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .............. 13

*In re Netflix Privacy Litig*., 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................... 12

*In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................. 15

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig*., 266 F. Supp. 3d 1
   (D.D.C. 2017) .................................................................................................................. 15

*Jamil v. Workforce Res., LLC*, 2020 WL 6544660, (S.D. Cal. Nov. 5, 2020) ................... 7

iii

*Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021) ...................................................... 11

*Lane v. Brown*, 166 F. Supp. 3d 1180 (D. Or. 2016) ........................................ 18

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)............................. 14, 17

*Mullins v Direct Digital LLC*, 795 F.3d 654 (7th Cir. 2015) .............................. 8

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ......... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)),
  *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019)................................. 15

*Norton v. Maximus, Inc.*, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) .......................... 17

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615
  (9th Cir. 1982)..................................................................................... 12

*Paredes Garcia v. Harborstone Credit Union*, 2023 WL 4315117, (W.D. Wash.
  July 3, 2023) ...................................................................................... 20

*Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 906 (8th Cir. 2018) ........................ 8

*Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) ............ 20

*Rinky Dink Inc. v. World Bus. Lenders, LLC*, 2016 WL 4052588 (W.D. Wash.
  Feb. 3, 2016) ...................................................................................... 17

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................... 15, 19

*Roe v. Frito-Lay, Inc.*, 2017 WL 1315626 (N.D. Cal. Apr. 7, 2017 ............................. 20

*Schneider v. Wilcox Farms, Inc.*, 2009 WL 10726662 (W.D. Wash. Jan. 12, 2009) ....... 18

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) ................................. 13, 20

*Summers v. Sea Mar Cmty. Health Centers*, 29 Wash. App. 2d 476 ........................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)........................ 13

*Weisenberger v. Ameritas Mut. Holding Co.*, 2024 WL 3903550 (D. Neb. Aug.
  21, 2024) ............................................................................................. 8

**OTHER AUTHORITIES**

Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist &
  Plain Language Guide* 3 (2010) ............................................................... 8

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 7, 8

Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).......................................... 19

iv

**TREATISES**

4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ........................................ 18

v

Plaintiffs Thomas Byers, Skyler Grenn, and Karen Prestegard, by and through their undersigned counsel, hereby move this Honorable Court for an order granting final approval to the class action settlement preliminarily approved by this Court on December 3, 2024 (Doc. 43).

As of the date of this Motion, of the approximately 180,000 individuals in the Settlement Class, only 6 have opted out and 0 have objected. [1] The proposed settlement, which provides for a $1,185,000.00 non-reversionary common fund settlement, will provide monetary and non-monetary relief, commensurate with the alleged damages they sustained. Reached through arm's-length negotiations after contested litigation by experienced and well-informed counsel, the Settlement will deliver tangible, immediate benefits to Settlement Class Members, addressing the potential harms of the data breach without protracted and inherently risky litigation.

Accordingly, Plaintiffs respectfully request this Court grant Plaintiffs' Motion for Final Approval of this Class Action Settlement so that Plaintiffs may begin the process of distributing benefits to those members of the Settlement Class who have submitted valid claims. Because the proposed Settlement is fair, reasonable, and adequate, and because it satisfies all the requirements of Rule 23, the Court should finally certify the Settlement Class and grant final approval.

---

[1] Class Counsel certify the Objection and Opt-Out deadline is March 3, 2025 and the Claims Deadline is April 2, 2025. To this end, Class Counsel will supplement the Objection and Opt-Out number prior to the March 11 Final Approval Hearing.

1

# I. INCORPORATION BY REFERENCE

Plaintiffs incorporate by reference Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan ("Motion for Preliminary Approval") (Dkt No. 41), the Declaration of Bryan L. Bleichner in support of the Motion for Preliminary Approval (Dkt No. 41-1), and Plaintiffs' Motion for Attorneys' Fees ("Motion for Attorneys' Fees") (Dkt No. 44).

# II. SUMMARY OF FACTS

For a detailed summary of facts, Plaintiffs incorporate the Motion for Preliminary Approval (pp. 3-5), which describes the Plaintiffs' investigation into the matter and Consolidated Amended Complaint (Dkt 18), briefing on Defendant's Motion to Dismiss (Dkts 22, 24, and 25), the Parties' exchange of informal discovery, mediation, and the negotiations that led to the Settlement Agreement currently before the Court for final approval.

# III. THE SETTLEMENT TERMS

For a detailed analysis of the Settlement Terms, Plaintiffs incorporate the Motion for Preliminary Approval (pp. 6-10) and Motion for Attorneys' Fees (pp. 8-9), which explains the benefits provided through the $1,185,000.00 non-reversionary common fund settlement.

# IV. THE NOTICE PROGRAM

As directed by this Court's Preliminary Approval Order, the parties worked diligently to implement the Notice Plan in coordination with the approved Claims

Administrator Kroll Settlement Administration, LLC ("Kroll"). Using records provided by Defendant, Kroll fully implemented the comprehensive notice program consisting of direct-mail Postcard Notices, a website, and a toll-free number. As detailed below and in the Declaration of Scott M. Fenwick of Kroll in Connection with Final Approval of Settlement ("Admin. Decl."), submitted herewith as **Exhibit 1**, that notice plan is now complete, and the results have been overwhelmingly successful.

### A.    Data and Case Setup

On December 6, 2024, Kroll established a toll-free telephone number, (833) 627-2518, for Settlement Class Members to call and obtain additional information regarding the settlement through an Interactive Voice Response ("IVR") system and by being connected to a live operator. Admin Decl., ¶ 5.  As of February 19, 2025, the IVR system has received 396 calls, and four (4) callers have been connected to live operators. *Id*.

On December 9, 2024, Kroll received three (3) data files from the Defendant.  The first file contained 714 records with a combination of names and physical addresses for Settlement Class Members.  *Id*., ¶ 6. The second file contained 175,586 records with a combination of names and physical addresses for Settlement Class Members. *Id*. The third file contained 411 records with a combination of names and physical addresses for Settlement Class Members. *Id*. Kroll undertook several steps to reconcile the three (3) files and compile the eventual Settlement Class List for the mailing of Short Form Notices. *Id*. The data was re-formatted; de-duped based on name and physical address; and combined into a single data file comprised of 175,967 unique records. *Id*. Additionally, in an effort

3

to ensure that Short Form Notices would be deliverable to Settlement Class Members, Kroll ran the Settlement Class List through the USPS's National Change of Address ("NCOA") database and updated the Settlement Class List with address changes received from the NCOA. *Id.* Kroll removed 12,979 records from the combined data file that had a missing or incomplete physical address. *Id.* As a result, 162,988 records were suitable for mailing Short Form Notices. *Id.*

On December 9, 2024, Kroll designated a post office box with the mailing address *Settlement Administrator – 83114,* c/o Kroll Settlement Administration LLC, P.O. Box 225391, New York, NY 10150-5391, in order to receive Requests for Exclusion, Claim Forms, objections, and correspondence from Settlement Class Members. *Id.*, ¶ 7. On December 10, 2024, Kroll created a dedicated Settlement Website entitled www.orthoalaskadataincidentlitigation.com. *Id.*, ¶ 8. The Settlement Website "went live" on January 2, 2025, and contains a summary of the settlement, important dates and deadlines, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Consolidated Class Action Complaint, Long Form Notice, Short Form Notice, Claim Form, Settlement Agreement, and Preliminary Approval Order, and allowed Settlement Class Members an opportunity to file a Claim Form online. *Id.*

### B. Effectiveness of Notice

On January 2, 2025, Kroll commenced the mailing of 162,988 Short Form Notices via first-class mail. *Id.*, ¶ 9. As of February 19, 2025, 573 Short Form Notices were returned

by the USPS with a forwarding address. *Id.*, ¶ 10. Of those, 516 Short Form Notices were automatically re-mailed to the updated addresses provided by the USPS. The remaining fifty-seven (57) Short Form Notices were re-mailed by Kroll to the updated address provided by the USPS. *Id.* As of February 19, 2025, 45,430 Short Form Notices were returned by the USPS as undeliverable as addressed, without a forwarding address. Kroll ran 44,886 undeliverable records through an advanced address search. [2] *Id.*, ¶11. The advanced address search produced 31,548 updated addresses. *Id.* Kroll has re-mailed Short Form Notices to the 31,548 updated addresses obtained from the advanced address search. *Id.* Of the 31,548 re-mailed Short Form Notices, none have been returned as undeliverable a second time. *Id.*

Based on the foregoing, following all Short Form Notice re-mailings, Kroll has reason to believe that Short Form Notices likely reached 149,106 of the 162,988 persons to whom Short Form Notice was mailed, which equates to a reach rate of the direct mail notice of approximately 91.48%. *Id.*, ¶ 12. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which

---

[2] Kroll is continuing to process and respond to Short Form Notices returned by the USPS as undeliverable and will continue to process and respond to all remailings up to the Final Approval Hearing.

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al., v. OrthoAlaska, LLC*

state that a notice plan that reaches[3] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. [4] *Id.*

### C. Claims, Opt-Outs, and Objections to Date

The Notice deadline is April 2, 2025. *Id.*, ¶ 13. As of February 19, 2025, Kroll has received 1,185 claim forms. *Id.*, ¶ 14.

As of February 19, 2025, Kroll has received six requests for exclusions and no objections. *Id.*, ¶ 16. The deadline to object or opt out ends of March 3, 2025. Class Counsel will notify the Court prior to the final approval hearing if any additional opt outs or objections are submitted.

## V. LEGAL ARGUMENT

Plaintiffs respectfully request that the Court grant final certification of the Settlement Class because: (1) the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3); (2) the Court-approved notice program satisfies both Rule 23 and due process requirements and has been fully implemented pursuant to the Court's requirements; and (3) the Settlement is fair, reasonable, and adequate.

---

[3] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[4] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010).

## A. The Settlement Continues to Merit Certification

A threshold inquiry at final approval is whether the Class satisfies the requirements of Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). The Court completed this first step in the settlement approval process when it granted preliminary approval and provisionally certified the Settlement Class. *See* Dkt. No. 73. Here, the Court's Preliminary Approval Order made specific findings that the Class met each of the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. *Id.* Likewise, the Court found that the Settlement Class meets each of the Rule 23(b)(3) requirements: that questions of law and fact common to the members of the class predominate over any "questions affecting only individual class members" and that a class action is superior to other available methods of fairly and efficiently adjudicating this controversy. *Id.* Plaintiffs respectfully submit that nothing has changed since these findings were made, and they remain accurate. Because no relevant facts have changed since the Court certified the Settlement Class the Court need not revisit class certification here. *Aikens v. Panatte, LLC*, No. 2:17-cv-01519, Dkt. #54 (W.D. Wash. Feb. 5, 2019); *Ewing v. Admin. Sys., Inc.*, C08-0797 RAJ, 2009 WL 10725426, at *1 (W.D. Wash. Sept. 30, 2009); *see also Jamil v. Workforce Res., LLC*, 2020 WL 6544660, at *3 (S.D. Cal. Nov. 5, 2020).

## B. Notice Satisfies Due Process

Prior to granting final approval, this Court must consider whether the members of the class received adequate notice of the settlement. Fed. R. Civ. P. 23(c)(2)(B); *accord*

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Specifically, the court must find that the notice to the class was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "[T]he rule does not insist on actual notice to all class members in all cases." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70% of a class is often reasonable and satisfies due process. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* 3 (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

"A low claim submission rate, while not ideal, is not necessarily indicative of a deficient notice plan." *Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 906 (8th Cir. 2018) (Affirming district court's order granting final approval of settlement when claims submission rate was 0.29% at the time of the final approval hearing). Specifically for data breach cases, a low claims rate is not unusual. *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550 at *3 (D. Neb. Aug. 21, 2024) (finding parties' efforts to afford class members the opportunity to obtain relief satisfied the Federal Rules and due process when 95,644 class action notices were sent to the settlement class and 1,200 members filed claims). "A response rate is relevant only secondarily to the examination of the notice that was provided in the context of the possible forms of notice

8

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al.*, v. OrthoAlaska, LLC
Case 3:23-cv-00242-SLG    Document 45    Filed 02/25/25    Page 14 of 28

reasonably available." *Summers v. Sea Mar Cmty. Health Centers*, 29 Wash. App. 2d 476, 497, *review denied sub nom. Barnes v. Sea Mar Cmty. Health Centers*, 549 P.3d 112 (2024) (Response rate of approximately 0.5 percent found sufficient where notice plan used known email and postal address as well as the use of a settlement website, toll free phone number, and Facebook and Instagram posts).

The Court already provisionally approved the Notice Plan proposed by Plaintiffs and Class Counsel, including the forms of Plaintiffs' Summary Notice and Long Form Notice, finding that they complied with the requirements of Rule 23 and due process. The Court also approved of Plaintiffs' proposed manner of distribution of notice forms as compliant with the requirements of Rule 23 and due process.

Plaintiffs' implementation of that Notice Plan was successful in all aspects. The Notice Program as designed and implemented reached approximately 91.48% of the identified Settlement Class. Admin. Decl. ¶ 12. That figure far exceeds the constitutional due process requirement in this Circuit. *See, e.g.*, *Askar v. Health Providers Choice, Inc.*, No. 19-CV-06125-BLF, 2021 WL 4846955, at *3 (N.D. Cal. Oct. 18, 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.") (citation omitted). Finally, all forms of notice accurately described the Settlement and directed the recipient to the Settlement Website where further information was available.

Based on the current claims rate (0.7%) and the remaining time in the notice period (approximately 6 weeks), Class Counsel anticipate the total claims rate will exceed 1% and

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al., v. OrthoAlaska, LLC*

near 1.5%. This claims rate is recognized as substantial within the 9th Circuit in the data breach context. *See, e.g., Hightower v. Receivable Performance Management*, No. 2:22-cv-01683, ECF No. 85 (W.D. Wash Dec. 13, 2024) (approving settlement with 0.65% claims rate).

The Court should therefore find that the Notice Plan, as executed, satisfied Rule 23(c)(2)(B) and fully complied with due process requirements.

### C.     The Settlement Should Be Finally Approved Pursuant to Rule 23(e)

To approve the settlement of a class action as fair, reasonable, and adequate, Rule 23(e)(2) requires the Court to consider "whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." At the final approval stage, the court considers the settlement in light of a non-exhaustive list of factors—the so-called Churchill factors—including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanson v. MGM Resorts Int'l*, No. 16-cv-1661-RAJ, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018). Not surprisingly, there is overlap between the 23(e) fairness, reasonableness, and adequacy considerations and the factors set out in the Ninth Circuit test in *Churchill*, 361 F.3d at 575. The Ninth Circuit has instructed that the court's 23(e)(2) analysis should be guided by the *Churchill* factors. *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

### D. Class Counsel and Class Representatives Have Adequately Represented the Settlement

Plaintiffs and Class Counsel have represented the Class adequately in connection with both the litigation and the Settlement. Plaintiffs have claims that are typical of, and coextensive with, those of the Class, and they have no interests that are antagonistic to other members of the Class. *See Hanlon*, 150 F.3d at 1020. Indeed, the Plaintiffs share the primary goal with the Class of obtaining the largest possible recovery from Defendant. Class Counsel diligently represented the Class throughout the course of this complex and hard-fought litigation. Class Counsel, who are experienced in representing plaintiffs in class action and data privacy cases, have spent nearly two years litigating this case and advocating for the Class. As a result of their efforts, the Settlement provides considerable monetary relief to participating Settlement Class members. By any measure, Class Counsel's efforts constitute adequate representation of the Class.

11

**E.     The Settlement Has No Indicia of Collusion and is the Result of Hard-Fought Negotiations Before an Experienced Mediator**

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). When approving a settlement prior to class certification the Court is required to engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

The Settlement here was the result of arm's length negotiations conducted under the guidance of Hon. David Jones (Ret.), as the Court found at preliminary approval. *See* Motion for Preliminary Approval at pp. 13-15. The fact that the parties reached the Settlement with the assistance of a neutral mediator is a "factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948. Courts within the Ninth Circuit "have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see also In re Anthem, Inc. Data*

*Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (internal quotation omitted)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Finally, the Settlement here has none of the indicia of possible collusion identified by the Ninth Circuit, such as a disproportionate requested attorneys' fee, a "clear sailing" fee agreement separate and apart from class funds, or the reversion of unpaid fees to the defendant. *See In re Bluetooth*, 654 F.3d at 947. There is no reverter in this common fund settlement. And, while Class Counsel's fee will be determined separately, as explained in Class Counsel's fee petition, they seek a percentage recovery that is consistent with Ninth Circuit precedent, reflects their work performed, and is proportionate. *See In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (stating, "[A] fee award of one-third is within the range of awards in this Circuit."). Accordingly, all evidence indicates that this Settlement was not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324–25 (C.D. Cal. 2016).

## F. The Relief Provided in Settlement is Fair and Adequate in Light of the Risk and Complexity of the Case

In Plaintiffs' Motion for Preliminary Approval (pp. 19-27) Plaintiffs provided an in-depth discussion regarding the fairness and adequacy of the Settlement. *See* Dkt. 41. In granting preliminary approval to the Settlement, this Court agreed, holding that the relief

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al., v. OrthoAlaska, LLC*
Case 3:23-cv-00242-SLG     Document 45     Filed 02/25/25     Page 19 of 28

provided to the class under the settlement is adequate, particularly when considering the costs, risks, and delay associated with proceeding to trial and potential appeal. Dkt. 43 at p. 5. Here, evaluating the risks of continued litigation against the scope of relief this Settlement provides to the Class, the Settlement merits final approval, as well.

### 1. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

This Settlement is excellent not only because of the valuable benefits obtained for the Settlement Class (both monetary and non-monetary), but also because Plaintiffs would have faced significant risks in litigating this case through trial. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class in an uncertain and ever-developing area of the law. Some data breach cases have faced hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Moreover, to Class Counsel's knowledge, no data breach class action has ever been tried, let alone resulted in a final judgment in favor of a class.

Each of these risks poses a risk that Settlement Class Members could end up losing the case at or before trial and recovering nothing at all. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,

266 F. Supp. 3d 1, 19 (D.D.C. 2017) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Thus, this factor favors approval.

### 2. The Risk of Maintaining Class Action Status Through Trial

If this case were to proceed forward in adversarial litigation, Plaintiffs face the additional risk of maintaining class certification through trial because Defendant would fiercely oppose class certification. Assuming Plaintiffs were able to proceed forward after obtaining a ruling certifying a contested class, they would still face risks and delays in maintaining and litigating their class claims. The Ninth Circuit recognizes the inherent risk that a district court "may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even if the Court were to certify the class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class."). Moreover, even if Plaintiffs were successful in obtaining class certification and winning trial in the district court, the risk of one or more lengthy appeals would be high. All the while, any relief to Settlement Class Members would remain in limbo and be delayed. Accordingly, the risk and uncertainty surrounding certification of the Class also supports approval of the Settlement.

15

### 3. The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. As discussed above, the Settlement makes significant relief available to Settlement Class Members in the form of reimbursement for Out-of-Pocket Losses, cash fund payments, and Privacy Shield. This Settlement is a strong result for the Class, and as discussed extensively at Preliminary Approval, the amount offered is in line with other settlements in cases involving data breaches of similar scope.

The relief offered by the Settlement is also reasonable in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel references the Motion for Attorneys' Fees for its request for one-third of the non-reversionary common fund in fees. *See, e.g., Bolding v. Banner Bank,* 2024 WL 755903, at *2 (W.D. Wash. Feb. 23, 2024) ("a 33% fee is standard and reasonable for this type of contingency case.").

### 4. The Extent of Discovery Completed and the Stage of Proceedings

Plaintiffs were well informed about the strengths and weaknesses of this case before entering into settlement discussions on behalf of class members. Plaintiffs sought and received informal discovery from Defendant related to the scope of the Data Incident, the merits of Plaintiffs' claims, the potential defenses thereto, the size of the Class, and other issues relating to class certification. Class Counsel was therefore able to draw on their extensive experience in privacy and data protection litigation to efficiently uncover the

relevant information bearing on the critical issues in this case. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiffs "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This factor, too, supports final approval.

### 5.     The Experience and Views of Class Counsel

Class Counsel are experienced class action litigators in the field of data breach and data privacy litigation and recommend the Settlement as being fair, reasonable and adequate and in the best interests of the Class Members. *See* Motion for Preliminary Approval at p. 25. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, NO. 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004). In light of the complexities of the case and the risks of continuing through further discovery, class certification, summary judgment, trial, and inevitable appeals—not to mention collecting on any judgment—Class Counsel firmly believes that the Settlement represents a favorable resolution of this litigation. "Absent fraud or collusion, courts can, and should,

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al., v. OrthoAlaska, LLC*
Case 3:23-cv-00242-SLG     Document 45     Filed 02/25/25     Page 23 of 28

rely upon the judgment of experienced counsel for the parties, when assessing a settlement's fairness and reasonableness." *Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-0494-SI, 2018 WL 4495461, at *9 (D. Or. Sept. 19, 2018) (internal quotations omitted). Thus, Class Counsel's recommendation that the Settlement is fair, reasonable, and adequate "strongly favor" approval. *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191 (D. Or. 2016).

### 6. Governmental Participants

Notice pursuant to CAFA was issued on October 28, 2024. Admin Decl. ¶ 4. As of this filing, there is no governmental participant in this matter. This factor is neutral.

### 7. The Reaction of Class Members to the Proposed Settlement

The reaction of the Class Members to the Proposed Settlement has been positive and supports approval. The number of class members who object to a proposed settlement "is a factor to be considered when approving a settlement" and the "absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane*, 166 F. Supp. 3d at 1191. "When few class members object, a court may appropriately infer that a class action settlement is fair, adequate, and reasonable." *Schneider v. Wilcox Farms, Inc.*, No. 07-CV-01160-JLR, 2009 WL 10726662, at *3 (W.D. Wash. Jan. 12, 2009). Here, *no class members have objected. See* 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

Moreover, as of February 19, 2024, Kroll has received only six valid requests for exclusion and no objections. Admin. Decl. ¶ 17. This near total lack of opposition is a strong indication that the class supports the settlement. *See Clemans v. New Werner Co.*, No. 3:12-cv-5186, 2013 WL 12108739, at *5 (W.D. Wash. Nov. 22, 2013) (in settlement where one objection and four exclusions were filed, court found that "the overwhelming non-opposition to and participation in the Settlement [are] strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable."); *see also Rodriguez*, 563 F.3d at 967 (concluding that the district court "had discretion to find a favorable reaction" when 54 of 376,301 class members objected to settlement); *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *8–9 (W.D. Wash. Mar. 26, 2001) (granting final approval where "less than 1% of the class opted out and only nine objections were submitted").

Accordingly, the Class's supportive reaction to the Settlement favors final approval.

**8.    The Settlement Treats Settlement Class Members Equitably**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al.*, *v. OrthoAlaska, LLC*
Case 3:23-cv-00242-SLG    Document 45    Filed 02/25/25    Page 25 of 28

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union*, 2023 WL 4315117, *5 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the class, as all class members are entitled to the same relief. Likewise, the provision of service awards for the Named Plaintiffs is consistent with the equitable treatment of class members. The requested service awards of $2,500.00 per class representative is reasonable and in line with awards granted in similar cases. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000.00 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000.00). Moreover, as the service awards fall in line with the caps on claims for monetary relief in the settlement, there is not a "'significant disparity between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann*, 314 F.R.D. at 328 (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)).

In sum, the Settlement treats all Class Members equitably relative to each other, and final approval is appropriate.

## VI. CONCLUSION

For the reasons contained in this memorandum, Plaintiffs respectfully request that the Court grant this motion for final approval of class action settlement as fair, reasonable, and adequate.

Dated: February 25, 2025

Respectfully submitted,

*/s/ Bryan L. Bleichner*
Bryan L. Bleichner (admitted *Pro Hac Vice*)
Philip J. Krzeski (admitted *Pro Hac Vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55401-2138
Telephone: (612) 339-7300
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

Gary M. Klinger (admitted *Pro Hac Vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (847) 208-4585
*gklinger@milberg.com*

Scott E. Cole
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800
*sec@colevannote.com*

***Interim Co-Lead Class Counsel Attorneys for
Plaintiffs and the Putative Class***

21

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.4(a)

The foregoing motion consists of 5,101 words, exclusive of captions, tables, and signature blocks, and therefore complies with Local Rule 7.4(a).

/s/ *Bryan L. Bleichner*
Bryan L. Bleichner (admitted *Pro Hac Vice*)

Case No. 3:23-cv-00242-SLG
*Thomas Byers, et al., v. OrthoAlaska, LLC*